## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PRATT CORRUGATED HOLDINGS, INC.

              Plaintiff,

                                    Case No.

      v.

PORTER PIZZA BOX OF FLORIDA, INC. (f/k/a STAR PIZZA BOX OF FLORIDA, INC.), PORTER PIZZA BOX OF ARIZONA, LLC (f/k/a STAR PIZZA BOX OF ARIZONA, LLC), PORTER PIZZA BOX OF TEXAS, LLC (f/k/a STAR PIZZA BOX OF TEXAS, LLC), PORTER LOGISTICS, LLC (f/k/a BOX LOGISTICS, LLC), HALDEN L. PORTER, individually and as the Trustee of the HALDEN L. PORTER REVOCABLE TRUST, LYNDA GAY PORTER, individually and as the Trustee of the LYNDA GAY PORTER REVOCABLE TRUST, J. CHASE PORTER, individually and as the Trustee of the J. CHASE PORTER BUSINESS TRUST, and GRANT T. PORTER, individually and as the Trustee of the GRANT T. PORTER BUSINESS TRUST,

JOHN DOES 1-25,

              Defendants

_____/

## **COMPLAINT**

    PLAINTIFF PRATT CORRUGATED HOLDINGS, INC. ("Plaintiff" or "Pratt") asserts this Complaint ("Complaint") against PORTER PIZZA BOX OF FLORIDA, INC. (f/k/a STAR PIZZA BOX OF FLORIDA, INC.) ("Porter FL"),

PORTER PIZZA BOX OF ARIZONA, LLC (f/k/a STAR PIZZA BOX OF ARIZONA, LLC), ("Porter AZ"), PORTER PIZZA BOX OF TEXAS, LLC (f/k/a STAR PIZZA BOX OF TEXAS, LLC) ("Porter TX"), PORTER LOGISTICS, LLC (f/k/a BOX LOGISTICS, LLC) ("Porter Logistics"), HALDEN L. PORTER ("Hal Porter"), individually and as the Trustee of the HALDEN L. PORTER REVOCABLE TRUST ("HLP Trust"), LYNDA GAY PORTER ("Lynda Porter"), individually and as the Trustee of the LYNDA GAY PORTER REVOCABLE TRUST ("LGP Trust"), J. CHASE PORTER ("Chase Porter"), individually and as the Trustee of the J. CHASE PORTER BUSINESS TRUST ("JCP Trust"), and GRANT T. PORTER ("Grant Porter"), individually and as the Trustee of the GRANT T. PORTER BUSINESS TRUST ("GTP Trust"), and John Does 1-25 (collectively, "Defendants") and avers, upon information and belief, as follows:

## NATURE OF ACTION

1.      On or about October 18, 2016, Pratt, as "Supplier," entered into a Master Supply and Purchase Agreement with "Star Pizza Box, a Florida corporation, and all of its divisions, affiliates, subsidiaries, and business units" as "Purchaser" (the "2016 Agreement"). A copy of the 2016 Agreement is attached

hereto as **Exhibit A**.[1]  Each of the Porter Affiliates were controlled and owned in part by Hal Porter.

2.      Under the 2016 Agreement, the Porter Affiliates agreed, among other things, to purchase at least $17 million in products annually and to grow that business to $20 million annually over the three-year term by transferring orders from other suppliers to Pratt.  In reliance on the representations, warranties and other commitments in the 2016 Agreement, Pratt proceeded to sell products at discounted prices, and provided other benefits to the Porter Affiliates.

3.      On November 7, 2016, just seventeen (17) days after signing the 2016 Agreement and twenty (20) days after the effective date of the 2016 Agreement, unbeknownst to Pratt and contrary to the representations made to Pratt, Hal Porter signed a letter of intent (the "WestRock Letter of Intent") to sell substantially all of the Porter Affiliates' assets (including its pizza-box operations and the "Star Pizza Box" brand) to Pratt's direct competitor, WestRock Company (or one of its affiliates) ("WestRock") for approximately $35 million (the "WestRock Sale Proceeds").  That transaction with WestRock closed on or about March 13, 2017, with certain portions of the WestRock Sale Proceeds being paid out over time.

---

[1]  Star Pizza Box and all of its divisions, affiliates, subsidiaries, and business units are collectively referred herein as "Porter Affiliates."  Defendants Porter AZ, Porter FL, Porter TX, and Porter Logistics are included amongst the Porter Affiliates.  Hal Porter, the HLP Trust, Lynda Porter, the LGP Trust, Chase Porter, the JCP Trust, Grant Porter, and the GTP Trust are or were at all times material insiders of the Porter Affiliates.

4.     The WestRock Sale Proceeds were thereafter transferred, in whole or in part, by some or all of the Porter Affiliates and/or Hal Porter, directly or indirectly, to the Defendants and/or other unknown parties (the "Transfers").

5.     As described below, the Transfers were actually or constructively fraudulent (or both) as to Pratt, given that they were made at a time while the Porter Affiliates were insolvent and at a time when they and Hal Porter owed significant debts to Pratt, and, in any event, were made by the Porter Affiliates with actual intent to hinder, delay and defraud Pratt and their other creditors.

## PARTIES

6.     Pratt is a corporation incorporated and existing under the laws of the State of Delaware with its principal place of business in Georgia. Pratt is therefore a citizen of Delaware and Georgia.

7.     Porter FL (formerly known as Star Pizza Box of Florida, Inc.) is a corporation incorporated under the laws of the State of Florida with its principal place of business in Florida. Porter FL is therefore a citizen of Florida.

8.     Porter AZ (formerly known as Star Pizza Box of Arizona, LLC) is a limited liability company organized under the laws of the State of Florida. The sole member of Porter AZ is a citizen of Florida. Porter AZ is therefore a citizen of Florida.

9.      Porter TX (formerly known as Star Pizza Box of Texas, LLC), is a limited liability company organized under the laws of the State of Florida. The members of Porter TX are citizens of Florida. Porter TX is therefore a citizen of Florida.

10.     Porter Logistics (formerly known as Box Logistics, LLC) is a limited liability company organized under the laws of the State of Florida. The sole member of Porter Logistics is a citizen of Florida. Porter Logistics is therefore a citizen of Florida.

11.     Hal Porter is a citizen of Florida and resides in Lakeland, Florida. Hal Porter is or was an officer, director, manager and/or managing member of each of the Porter Affiliates. Hal Porter was also a shareholder of the Porter Affiliates.

12.     The HLP Trust is or was a revocable trust created under the laws of the state of Florida. The HLP Trust is or was a shareholder of the Porter Affiliates.

13.     Lynda Porter is a citizen of Florida and resides in Lakeland, Florida. Lynda Porter is or was a shareholder of the Porter Affiliates.

14.     The LGP Trust is or was a revocable trust created under the laws of the state of Florida. The LGP Trust is or was a shareholder of the Porter Affiliates.

15.     Chase Porter is a citizen of Florida and resides in Lakeland, Florida. Chase Porter is or was a shareholder of the Porter Affiliates.

16.     The JCP Trust is or was a trust created under the laws of the state of Florida.  The JCP Trust is or was a shareholder of the Porter Affiliates.

17.     Grant Porter is a citizen of Florida and resides in Lakeland, Florida. Grant Porter is or was a shareholder of the Porter Affiliates.

18.     The GTP Trust is or was a trust created under the laws of the state of Florida.  The GTP Trust is or was a shareholder of the Porter Affiliates.

19.     John Does 1-25 are direct, indirect and/or subsequent transferees of fraudulently transferred funds from Defendants, who are liable for the avoidance and return of monies to Pratt for the reasons set forth herein.  To the extent necessary, Pratt will amend this Complaint to substitute in the identities of John Does 1-25 as the same are identified during discovery.  Pratt does not limit the number of additional defendants to twenty-five and reserves the right to add as defendants and seek recovery from as many persons and entities as may be liable to Pratt under applicable law.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over the subject matter of this litigation pursuant 28 U.S.C. § 1332 as complete diversity exists among the parties, and the amount in controversy exceeds $75,000.00.

21.     This Court has personal jurisdiction over each of Defendants under Florida law and the United States Constitution because they are citizens of Florida,

and thus Defendants should have reasonably expected their actions to have consequences within the State of Florida and Middle District of Florida.

22.    Venue in this forum is proper under 28 U.S.C. § 1391(b)(1) because Hal Porter, Lynda Porter, Chase Porter, and Grant Porter reside in this District. Moreover, at all times material, Porter FL, Porter TX, and Porter Logistics maintained their respective principal places of business in this District.

## FACTUAL BACKGROUND

### A.    Business Relationship Between Pratt and Porter

23.    The Porter Affiliates were formerly in the business of printing pizza boxes.

24.    Pratt is in the business of manufacturing and selling corrugated paper products, including pizza boxes.

25.    In 2012, Pratt began selling pizza boxes to the Porter Affiliates pursuant to a Master Supply and Purchase Agreement dated July 1, 2012 (the "2012 Agreement").

26.    In 2016, Pratt and Hal Porter began discussions about the possibility of Pratt acquiring certain assets of the Porter Affiliates.  In mid-2016, Pratt and Hal Porter reached an agreement as to the purchase price for the acquisition, but before consummating the transaction, Porter demanded to be paid an additional "couple

million dollars." Viewing this demand as "poor form," Pratt was unwilling to renegotiate the deal and did not acquire those assets.

27.    The 2012 Agreement automatically renewed for one year on July 1, 2016.

28.    At about the same time, Hal Porter told Pratt that, despite the impasse, he wanted to continue to have a long-term business relationship. Hal Porter proposed committing the Porter Affiliates to a longer-term supply contract that contained minimum purchase requirements and a commitment to increase those minimums over the contract term, if Pratt would agree to more favorable terms.

29.    This proposed longer term supply contract would benefit Defendants because the economic incentives induced from Pratt upon this promise of a long-term supply agreement would lower the cost of goods sold and, thus, improve the Porter Affiliates' balance sheets.

30.    Pratt negotiated with Hal Porter the terms for the new, long-term supply agreement in late August, September, and into October 2016.

31.    During those negotiations, contrary to his true intentions, Hal Porter told Pratt that he would not sell his business to WestRock, one of Pratt's direct competitors. Hal Porter also assured Pratt that, although he was still looking for an investor, he would retain control of the business, and it would not affect the

Porter Affiliates' ability to meet their obligations under any new long-term supply agreement.

**B.    The 2016 Agreement**

32.    On or about October 18, 2016, these negotiations culminated in a new Master Supply and Purchase Agreement for Pratt to continue to sell pizza boxes and related products to the Porter Affiliates (*i.e.,* the 2016 Agreement).  Hal Porter signed the 2016 Agreement on October 21, 2016.

33.    In the 2016 Agreement, Pratt agreed to a discounted price for the first six months, rebates, and a one-time payment of $160,000 (the "$160,000 Payment") to be paid in installments over the first nine months of the 2016 Agreement.

34.    The Porter Affiliates (through Hal Porter) induced Pratt to agree to the foregoing terms based on a series of commitments in the 2016 Agreement, including a three-year commitment for the purchase of at least $17 million in products annually and to grow that business to $20 million annually over the three-year term by transferring orders from other suppliers to Pratt, as well as a commitment to allow Pratt to participate as a joint exhibitor under the "Star Pizza Box" brand at the International Pizza Expo in Las Vegas on March 28-30, 2017.

35.    In reliance on the representations, warranties and other commitments from the Porter Affiliates, Pratt proceeded to sell products at discounted prices, started making payments towards the $160,000 Payment, and also spent over

$300,000 on rebuilding certain machinery at its corrugating plant in Conyers, Georgia to accommodate the anticipated additional volume.

36.    The 2016 Agreement made it clear that all the pricing terms and other conditions, including the six-month price discount, rebates, and the $160,000 Payment, were contingent upon the purchase of the required annual minimums.

## C.    The Porter Affiliates' Breach and Fraud

37.    On November 7, 2016, just seventeen (17) days after signing the 2016 Agreement and twenty (20) days after the effective date of the 2016 Agreement, unbeknownst to Pratt and contrary to the representations made to Pratt, Hal Porter signed the WestRock Letter of Intent to sell substantially all of the Porter Affiliates' assets (including its pizza-box operations and the "Star Pizza Box" brand) to Pratt's direct competitor, WestRock, for approximately $35 million.  Like Pratt, WestRock manufactures and sells corrugated paper products, including pizza boxes. Pratt has never had a contract to sell pizza boxes to WestRock, much less a contract to sell any products to WestRock at a discount.  The WestRock Letter of Intent prohibited the "Sellers" (defined below) or any affiliate from, among other things, negotiating with any person or entity other than WestRock in relation to any "Acquisition Proposal" (as defined in the WestRock Letter of Intent).

38.    With this fact unknown, Pratt performed under the 2016 Agreement, providing at least $624,901.00 in discounts on pizza box purchases. Pratt also paid

$53,607 towards the $160,000 Payment, which included funds for Pratt to jointly participate at the upcoming International Pizza Expo (which Pratt was prevented from participating as provided under the 2016 Agreement). Pratt also proceeded with rebuilding certain machinery in anticipation of meeting the Porter Affiliates' purchase obligations.

39. The fraud on Pratt continued throughout the remainder of the relationship. For example, in January 2017, Hal Porter told Pratt that he was still in negotiations to sell to a private equity group. That statement was false. When Hal Porter made this statement to Pratt, he was not in negotiation to sell to a private equity group – he was instead actively moving forward with his plan to sell all of the Porter Affiliates' assets to WestRock. In fact, the day before Hal Porter made the statement to Pratt, he had just received WestRock's draft Asset Purchase Agreement, along with an extension of the exclusivity provision in the WestRock Letter of Intent prohibiting negotiations with anyone other than WestRock.

40. The misrepresentations made to Pratt and the failure to disclose that the assets of the Porter Affiliates would soon be sold to Pratt's direct competitor not only breached the 2016 Agreement, but also caused Pratt to continue providing economic incentives to its own detriment.

**D.**    <u>**The Asset Sale to WestRock**</u>

41.    Approximately five months after signing the 2016 Agreement, on or about March 13, 2017, the asset sale to WestRock (the "Asset Sale") closed, pursuant to an Asset Purchase Agreement dated March 13, 2017 by and among WestRock CP, LLC and Star Pizza Box of Arizona, LLC (now Porter AZ), Star Pizza Box of Florida, Inc. (now Porter FL), Star Pizza Box of Ohio, LLC, Star Pizza Box of Texas, LLC (now Porter TX), Box Logistics, LLC (now Porter Logistics), Hal Porter, individually and as the Trustee of the HLP Trust, Lynda Porter, individually and as the Trustee of the LGP Trust, Chase Porter, individually, the HLP Trust, the LGP Trust, the JCP Trust, and the GTP Trust (the "WestRock APA").[2]  Prior to March 13, 2017, neither Hal Porter nor the Porter Affiliates informed Pratt about the Asset Sale to WestRock, despite the obligation to do so.

42.    As part of the Asset Sale, the 2016 Agreement was not assigned to WestRock.  In fact, the 2016 Agreement was the only contract that was specifically excluded from Asset Sale by the WestRock APA.  The purported right to receive certain rebate payments from Pratt, however, was assigned to WestRock.

---

[2] Star Pizza Box of Arizona, LLC (now Porter AZ), Star Pizza Box of Florida, Inc., (now Porter FL),  Star Pizza Box of Ohio, LLC, Star Pizza Box of Texas, LLC (now Porter TX), and Box Logistics, LLC (now Porter Logistics) are collectively defined in the WestRock APA as the "Sellers."  Hal Porter, individually and as the Trustee of the HLP Trust, Lynda Porter, individually and as the Trustee of the LGP Trust, Chase Porter, individually, the HLP Trust, the LGP Revocable Trust, the JCP Trust, and the GTP Trust are collectively defined in the WestRock APA as the "Shareholders".  The "Sellers" and the "Shareholders" are collectively defined in the WestRock APA as the "Seller Parties."

43.    As a result of the Asset Sale, the Porter Affiliates no longer had any pizza box operations and therefore stopped ordering pizza boxes from Pratt, even though the 2016 Agreement and all obligations thereunder were not assigned to WestRock.

44.    Pratt was not provided with advanced notice of the Asset Sale, even though the 2016 Agreement specifically required Pratt to receive advance notice and required Pratt's consent before assigning any interest in the 2016 Agreement.

45.    As set forth in the WestRock APA, the approximately $35 million in WestRock Sale Proceeds was generally to be paid as follows:

  (i)    Approximately $30 million at closing (the "Closing Payment");

  (ii)   Approximately $1.5 million subsequently deposited into a working capital escrow account (the "Working Capital Escrow"); and

  (iii)  Approximately $3.5 million deposited into an indemnification escrow account (the "Indemnification Escrow"), to be paid twenty-four (24) months after the Closing Date of March 13, 2017 (*i.e.,* the Indemnification Escrow was to be paid on after March 13, 2019).

46.    Under the WestRock APA, Hal Porter as the "Seller Representative" was appointed by each Seller Party as an agent, and was responsible for making and receiving payments on behalf of each of them; and ensuring that all amounts received by the Seller Representative on behalf of the others under the WestRock

APA would be promptly paid by the Seller Representative to the Seller Parties, as mutually instructed by them.

47.    The WestRock Asset Sale closed on or about March 13, 2017, at which time Pratt was a creditor of Hal Porter and the Porter Affiliates.  The Transfers were thereafter distributed and made in exchange for nothing, rendering the Porter Affiliates unable to fulfill their obligations under the 2016 Agreement or otherwise operate, dramatically undercapitalized and insolvent.

48.    The Transfers were made with actual intent to hinder, delay or defraud Pratt in its ability to recover damages in relation to the 2016 Agreement.

49.    After the Asset Sale, the Porter Affiliates changed their corporate names, and also stopped ordering products from Pratt, in direct violation of the 2016 Agreement.

**E.    The Georgia Litigation**

50.    Despite the foregoing facts, on or about January 4, 2018, Porter FL sued Pratt in the United States District Court for the Norther District of Georgia (the "Georgia Court"), in a matter styled *Porter Pizza Box of Florida, Inc. v. Pratt Corrugated Holdings, Inc.*, Civ. Action No. 18-cv-00063-AT (N.D. Ga.) (the "Georgia Litigation").

51.    In the Georgia Litigation, Porter FL sought damages against Pratt for unpaid rebates allegedly owed under the 2016 Agreement. However, the Georgia

Court dismissed the claims finding Porter FL lacked standing because it assigned the right to the rebates to WestRock.

52.     Pratt asserted various counterclaims against Porter FL (*e.g.*, breach of contract and fraud) and Hal Porter (*e.g.*, fraud).

53.     As asserted in the Georgia Litigation, Pratt is entitled to recover: (1) $53,607 in monies paid towards a one-time $160,000 payment contemplated in the 2016 Agreement; (2) $624,901 in discounts provided by Pratt, expressly tied to the obligations and representations under the 2016 Agreement; and (3) $311,363 in costs incurred by Pratt as a result of its rebuilding machinery in anticipation of meeting the required purchase obligations.  Pratt also seeks punitive damages (on a multiple between three and nine times its compensatory damages).

54.     In addition, Pratt is entitled to recover lost profits in relation to the Porter Affiliates' failure to make the required purchases under the 2016 Agreement, which total at least $7.4 million.

55.     Pratt was a creditor of Hal Porter and the Porter Affiliates on or prior to the closing of the Asset Sale under the WestRock APA.  Pratt remains a creditor of Hal Porter and the Porter Affiliates.

56.     Pursuant to the Florida Uniform Fraudulent Transfer Act and other applicable law, Pratt hereby seeks to avoid, attach, set aside and recover the Transfers made to Defendants and any unknown parties.

15

## COUNT I – ACTUAL FRAUDULENT TRANSFER – Fla. Stat. § 726.105

### (Indemnification Escrow)

57.     Pratt repeats and re-alleges the allegations in paragraphs 1 through 56 above, as if fully set forth herein.

58.     Pratt was a creditor of Hal Porter and the Porter Affiliates on or prior to the closing of the Asset Sale.

59.     The approximately $3.5 million Indemnification Escrow, or some portion thereof, was paid by WestRock and subsequently transferred by Hal Porter and/or some or all of the Porter Affiliates, directly or indirectly, to some or all of the Defendants and other unknown parties.

60.     Subsequent to the closing of the WestRock APA, while Pratt was its creditor, the Transfers were made, in exchange for no value, leaving the Porter Affiliates unreasonably undercapitalized in view of their obligations to Pratt and unable to pay debts as they came due.

61.     The Transfers were made with actual intent to hinder, delay or defraud Pratt in its ability to recover damages against Hal Porter and the Porter Affiliates.  Among other things, the following "badges of fraud" identified under Fla. Stat. § 726.105(b)(2) are present:

        a.     The Transfers were made to insiders of the Porter Affiliates.

b.      The Transfers were made at a time when Hal Porter and the Porter Affiliates knew of the obligations to Pratt under the 2016 Agreement, which was omitted from the WestRock APA.

c.      The Transfers were made at a time when litigation was pending and/or when Hal Porter and the Porter Affiliates knew or reasonably should have known that litigation in relation to the 2016 Agreement was imminent.  For example, in October 2017, just months after closing the WestRock APA, Hal Porter and Porter FL sent their own demand letter to Pratt in relation to the 2016 Agreement, with Porter FL commencing the Georgia Litigation shortly thereafter on January 4, 2018.

d.      The Transfers constituted a transfer of substantially all of the Porter Affiliates' assets.

e.      The Porter Affiliates received no value in exchange for the Transfers.

f.      The Porter Affiliates ultimately were insolvent as a result of the Transfers.

62.     Moreover, the Transfers were made in furtherance of Hal Porter's and the Porter Affiliates' scheme to defraud and breach their obligations to Pratt.

63.    Pursuant to the Florida Uniform Fraudulent Transfer Act, Pratt is entitled to avoid the Transfers in amounts to be proven at trial, and to recover such amounts to satisfy the debts owed to Pratt.

**WHEREFORE**, Plaintiff demands to avoid, attach, recover, levy upon and impose a constructive trust, jointly and severally, over Defendants' interests in the Transfers in amounts to be proven at trial, to recover such amounts to satisfy the debts owed to Pratt, and for such additional relief as this Court deems just and proper.

## COUNT II – ACTUAL FRAUDULENT TRANSFER – Fla. Stat. § 726.105
### (Working Capital Escrow)

64.    Pratt repeats and re-alleges the allegations in paragraphs 1 through 56 above, as if fully set forth herein.

65.    Pratt was a creditor of Hal Porter and the Porter Affiliates on or prior to the closing of the Asset Sale.

66.    The approximately $1.5 million Working Capital Escrow, or some portion thereof, was paid by WestRock and subsequently transferred by Hal Porter and/or some or all of the Porter Affiliates, directly or indirectly, to some or all of the Defendants and other unknown parties.

67.    Subsequent to the closing of the WestRock APA, while Pratt was its creditor, the Transfers were made, in exchange for no value, leaving the Porter

18

Affiliates unreasonably undercapitalized in view of their obligations to Pratt and unable to pay debts as they came due.

68.    The Transfers were made with actual intent to hinder, delay or defraud Pratt in its ability to recover damages against Hal Porter and the Porter Affiliates.  Among other things, the following "badges of fraud" identified under Fla. Stat. § 726.105(b)(2) are present:

   a.    The Transfers were made to insiders of the Porter Affiliates.

   b.    The Transfers were made at a time when Hal Porter and the Porter Affiliates knew of the obligations to Pratt under the 2016 Agreement, which was omitted from the WestRock APA.

   c.    The Transfers were made at a time when litigation was pending and/or when Hal Porter and the Porter Affiliates knew or reasonably should have known that litigation in relation to the 2016 Agreement was imminent.  For example, in October 2017, just months after closing the WestRock APA, Hal Porter and Porter FL sent their own demand letter to Pratt in relation to the 2016 Agreement, with Porter FL commencing the Georgia Litigation shortly thereafter on January 4, 2018.

   d.    The Transfers constituted a transfer of substantially all of the Porter Affiliates' assets.

e.  The Porter Affiliates received no value in exchange for the Transfers.

f.  The Porter Affiliates ultimately were insolvent as a result of the Transfers.

69.  Moreover, the Transfers were made in furtherance of Hal Porter's and the Porter Affiliates' scheme to defraud and breach their obligations to Pratt.

70.  Pursuant to the Florida Uniform Fraudulent Transfer Act, Pratt is entitled to avoid the Transfers in amounts to be proven at trial, and to recover such amounts to satisfy the debts owed to Pratt.

**WHEREFORE**, Plaintiff demands to avoid, attach, recover, levy upon and impose a constructive trust, jointly and severally, over Defendants' interests in the Transfers in amounts to be proven at trial, to recover such amounts to satisfy the debts owed to Pratt, and for such additional relief as this Court deems just and proper.

## COUNT III – ACTUAL FRAUDULENT TRANSFER – Fla. Stat. § 726.105
### (Closing Payment)

71.  Pratt repeats and re-alleges the allegations in paragraphs 1 through 56 above, as if fully set forth herein.

72.  Pratt was a creditor of Hal Porter and the Porter Affiliates on or prior to the closing of the Asset Sale.

20

73.    The approximately $30 million Closing Payment, or some portion thereof, was paid by WestRock and subsequently transferred by Hal Porter and/or some or all of the Porter Affiliates, directly or indirectly, to some or all of the Defendants and other unknown parties.

74.    Subsequent to the closing of the WestRock APA, while Pratt was its creditor, the Transfers were made, in exchange for no value, leaving the Porter Affiliates unreasonably undercapitalized in view of their obligations to Pratt and unable to pay debts as they came due.

75.    The Transfers were made with actual intent to hinder, delay or defraud Pratt in its ability to recover damages against Hal Porter and the Porter Affiliates.  Among other things, the following "badges of fraud" identified under Fla. Stat. § 726.105(b)(2) are present:

    a.    The Transfers were made to insiders of the Porter Affiliates.

    b.    The Transfers were made at a time when Hal Porter and the Porter Affiliates knew of the obligations to Pratt under the 2016 Agreement, which was omitted from the WestRock APA.

    c.    The Transfers were made at a time when litigation was pending and/or when Hal Porter and the Porter Affiliates knew or reasonably should have known that litigation in relation to the 2016 Agreement was imminent.  For example, in October 2017,

just months after closing the WestRock APA, Hal Porter and Porter FL sent their own demand letter to Pratt in relation to the 2016 Agreement, with Porter FL commencing the Georgia Litigation shortly thereafter on January 4, 2018.

    d.    The Transfers constituted a transfer of substantially all of the Porter Affiliates' assets.

    e.    The Porter Affiliates received no value in exchange for the Transfers.

    f.    The Porter Affiliates ultimately were insolvent as a result of the Transfers.

76.    Moreover, the Transfers were made in furtherance of Porter's and the Porter Affiliates' scheme to defraud and breach their obligations to Pratt.

77.    Pursuant to the Florida Uniform Fraudulent Transfer Act, Pratt is entitled to avoid the Transfers in amounts to be proven at trial, and to recover such amounts to satisfy the debts owed to Pratt.

**WHEREFORE**, Plaintiff demands to avoid, attach, recover, levy upon and impose a constructive trust, jointly and severally, over Defendants' interests in the Transfers in amounts to be proven at trial, to recover such amounts to satisfy the debts owed to Pratt, and for such additional relief as this Court deems just and proper.

## COUNT IV – CONSTRUCTIVE FRAUDULENT TRANSFER OF PROPERTY – Fla. Stat. § 726.106

### (Indemnification Escrow)

78.    Pratt repeats and re-alleges the allegations in paragraphs 1 through 56 above, as if fully set forth herein.

79.    The approximately $3.5 million Indemnification Escrow, or some portion thereof, was paid by WestRock on or after March 13, 2019, and subsequently transferred by Hal Porter and/or some or all of the Porter Affiliates, directly or indirectly, to some or all of the Defendants.

80.    Pratt was a creditor of Hal Porter and the Porter Affiliates on or prior to the closing of the Asset Sale.

81.    Pratt was a creditor of Hal Porter and the Porter Affiliates at the time they made the Transfers and at the time of any subsequent transfers thereof.

82.    The Transfers were made for less than reasonably equivalent value.

83.    The Transfers were made at a time when Hal Porter and/or the Porter Affiliates were insolvent, or were rendered insolvent as a result of such Transfers.

84.    Pursuant to the Florida Uniform Fraudulent Transfer Act, Pratt is entitled to avoid the Transfers, and any subsequent transfers thereof, in amounts to be proven at trial, and recover such amounts to satisfy the debts owed to Pratt.

**WHEREFORE**, Plaintiff demands to avoid, attach, recover, levy upon and impose a constructive trust, jointly and severally, over Defendants' interests in the

Transfers in amounts to be proven at trial, to recover such amounts to satisfy the debts owed to Pratt, and for such additional relief as this Court deems just and proper.

## COUNT V – CONSTRUCTIVE FRAUDULENT TRANSFER OF PROPERTY - Fla. Stat. § 726.106

### (Working Capital Escrow)

85.     Pratt repeats and re-alleges the allegations in paragraphs 1 through 56 above, as if fully set forth herein.

86.     The approximately $1.5 million Working Capital Escrow, or some portion thereof, was paid by WestRock subsequent to the closing of the WestRock APA and subsequently transferred by Hal Porter and/or some or all of the Porter Affiliates, directly or indirectly, to some or all of the Defendants.

87.     Pratt was a creditor of Hal Porter and the Porter Affiliates on or prior to the closing of the Asset Sale.

88.     Pratt was a creditor of Hal Porter and the Porter Affiliates at the time they made the Transfers and at the time of any subsequent transfers thereof.

89.     The Transfers were made for less than reasonably equivalent value.

90.     The Transfers were made at a time when Hal Porter and/or the Porter Affiliates were insolvent, or were rendered insolvent as a result of such Transfers.

91.    Pursuant to the Florida Uniform Fraudulent Transfer Act, Pratt is entitled to avoid the Transfers, and any subsequent transfers thereof, in amounts to be proven at trial, and recover such amounts to satisfy the debts owed to Pratt.

**WHEREFORE**, Plaintiff demands to avoid, attach, recover, levy upon and impose a constructive trust, jointly and severally, over Defendants' interests in the Transfers in amounts to be proven at trial, to recover such amounts to satisfy the debts owed to Pratt, and for such additional relief as this Court deems just and proper.

## COUNT VI – CONSTRUCTIVE FRAUDULENT TRANSFER OF PROPERTY - Fla. Stat. § 726.106

### (Closing Payment)

92.    Pratt repeats and re-alleges the allegations in paragraphs 1 through 56 above, as if fully set forth herein.

93.    The approximately $30 million Closing Payment, or some portion thereof, was paid by WestRock on or after the closing of the WestRock APA and subsequently transferred by Hal Porter and/or some or all of the Porter Affiliates, directly or indirectly, to some or all of the Defendants.

94.    Pratt was a creditor of Hal Porter and the Porter Affiliates on or prior to the closing of the Asset Sale.

95.    Pratt was a creditor of Hal Porter and the Porter Affiliates at the time they made the Transfers and at the time of any subsequent transfers thereof.

25

96.    The Transfers were made for less than reasonably equivalent value.

97.    The Transfers were made at a time when Hal Porter and/or the Porter Affiliates were insolvent, or were rendered insolvent as a result of such Transfers.

98.    Pursuant to the Florida Uniform Fraudulent Transfer Act, Pratt is entitled to avoid the Transfers, and any subsequent transfers thereof, in amounts to be proven at trial, and recover such amounts to satisfy the debts owed to Pratt.

**WHEREFORE**, Plaintiff demands to avoid, attach, recover, levy upon and impose a constructive trust, jointly and severally, over Defendants' interests in the Transfers in amounts to be proven at trial, to recover such amounts to satisfy the debts owed to Pratt, and for such additional relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment on its claims for relief against Defendants, jointly and severally, as follows:

(a)    Avoiding the Transfers in amounts necessary to satisfy Plaintiff's claims;

(b)    Attaching and imposing a constructive trust over Defendants' interests in the Transfers in amounts necessary to satisfy Plaintiff's claims;

(c)    Providing for the recovery of and execution upon Defendants' interests in the Transfers in amounts necessary to satisfy Plaintiff's claims;

(d)    Holding Defendants liable to Plaintiff in amounts equal to their interests in the Transfers in amounts necessary to satisfy Plaintiff's claims;

(e)    Awarding all costs, expenses and fees, including attorneys' fees, of this action upon Defendants;

(f)    Allowing Plaintiff leave of court to conduct expedited discovery in relation to information necessary to ascertain the location of the Transfers and the identity of the unnamed Defendants; and

(g)    Granting such other and further relief as this Court deems just, equitable and proper.

Dated: January 27, 2023                    Respectfully submitted,

                                           NELSON MULLINS RILEY & SCARBOROUGH, LLP

                                           */s/ Melissa J. Gomberg*
                                           Melissa J. Gomberg
                                           Florida Bar No.: 44021
                                           2 S. Biscayne Blvd.
                                           One Biscayne Tower, 21st Fl.
                                           Miami, FL 33131
                                           Telephone: 305.373.9492
                                           melissa.gomberg@nelsonmullins.com

                                           *Attorneys for Plaintiff Pratt Corrugated Holdings, Inc.*