UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PRATT CORRUGATED
HOLDINGS, INC.

     Plaintiff,

v.                                             CASE NO.: 8:23-cv-200-WFJ-CPT

PORTER PIZZA BOX OF FLORIDA,
INC., *et al.*,

     Defendants.
_____/

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

Plaintiff Pratt Corrugated Holdings, Inc. ("Pratt") has sued Hal Porter, his wife, and his two children claiming that they fraudulently transferred proceeds from the sale of their family business ("Porter Pizza" f/k/a "Star Pizza") to a Pratt competitor (WestRock). Pratt was a materials supplier for the Porter family's business that tried to buy Porter Pizza but lost the deal by massively underbidding.

Pratt bases its claim here on a Master Supply and Purchase Agreement ("Supply Agreement") that it had with the Porter companies. Pratt's claim is not based on any unpaid invoices for Pratt's materials as of the date of the transfer in question. As will be shown in the Defendants' soon-to-be-filed motion to dismiss, the Supply Agreement's express terms prohibit Pratt's claim for damages and the Defendants

owed no debt to Pratt when they sold their business. Pratt's claims are also barred by the statute of limitations.

Pratt has known of the Porter family's sale to WestRock since the transaction occurred in March 2017. Despite its bombastic litigation strategy, after the sale, Pratt's internal discussions show that it believed "Hal did not do anything 'wrong'" (July 6, 2017 internal Pratt email, a copy of which is attached as Exhibit 71)[1], that Pratt would simply not pay accrued rebates under the Supply Agreement, and that the contract was "null and void." (June 30 internal Pratt emails dated June 30, 2017, a copy of which is attached as Exhibit 44; *see also* Exhibit 71 ("Our [Supply A]greement ended with the sale")).

After the sale, Pratt told Porter Pizza "We've got your back for as long as you need us." (May 8, 2017 email from Pratt, a copy of which is attached as Exhibit 39). Porter Pizza was not aware of any alleged claim by Pratt until 2018, when Pratt asserted a counterclaim in litigation in the United States District Court for the Northern District of Georgia, *Porter Pizza Box of Florida, Inc. v. Pratt Corrugated Holdings, Inc.*, Civil Action No. 18-cv-00063-AT (the "Georgia Litigation"). In the Georgia Litigation, Porter Pizza of Florida sued Pratt for rebates that had accrued prior to and under the Supply Agreement. (ECF No. 1, ¶¶ 50-52). Pratt counterclaimed and added Mr. Porter as a party, asserting claims for fraud, constructive trust, and breach of contract. (*Id.*). That case remains pending. Notably, instead of addressing Mr. Porter's

---

[1] The Exhibit numbering is based upon the Plaintiff's trial exhibit numbering in the Georgia Litigation for ease of reference across the various cases.

claim for rebates or expressing that Pratt believed it had a claim for damages, Pratt internally advised its employees to "███████████" Mr. Porter. (May 5, 2017 internal Pratt email attached as Exhibit 68).

The primary basis for Pratt's claim of a debt owed is that Mr. Porter allegedly defrauded Pratt by entering into the Supply Agreement without disclosing that he may sell his business to WestRock. But he did disclose his negotiations with WestRock and Pratt knew about them throughout 2016 and at the time it entered into the Supply Agreement:

> Q. When Pratt entered into the 2016 supply agreement in October of 2016, were you aware that Hal Porter was interested in selling his company, Star Pizza?
>
> A. Yes.
>
> Q. And isn't it true, sir, that you were aware that WestRock was interested in buying Hal's company, Star Pizza?
>
> A. Yes.
>
> Q. And you knew that at the time that Pratt executed the 2016 supply agreement, correct?
>
> [Objection to form omitted]
>
> A. Yes.

(Deposition of Pratt at p.8:24-p.9:13. Excerpts from Pratt's deposition are attached as Exhibit A; *see also* March 23, 2016 email from H. Porter to Pratt attached as Exhibit 21 (Westrock "███████████"); April 22, 2016 Pratt internal email attached as Exhibit 49 ("████████████████████████████████████████████████████████████████████████████████"); April 24, 2016 internal

Pratt email attached as Exhibit 50 (Hal's ""); May 5, 2016 Pratt internal email attached as Exhibit 52 (" "); October 7, 2016 internal Pratt email attached as Exhibit 112 (" ....").

This case, and the two other federal cases Pratt is litigating against the Porters, are sour grapes abuses of the judicial system to punish the Porter family for Pratt's own business mistake. Pratt is attempting to pressure the Porter family to pay an unwarranted settlement in the Georgia Litigation by alleging fraudulent transfer violations against the Porters in two different Federal courts. Pratt is essentially seeking post-judgment discovery here that it is not entitled to in the pending Georgia litigation. This does not constitute good cause for the Court to depart from the ordinary discovery procedures. The Court should not permit misuse of the judicial system by allowing Pratt to fish through the Porter's finances with no good faith legal or factual basis. Defendants respectfully requests the Court to deny Pratt's motion for expedited discovery.

## LEGAL STANDARD FOR EXPEDITED DISCOVERY

"Discovery is normally barred prior to the Rule 26(f) conference." *Mitsubishi Hitachi Power Sys. Ams. v. Siemens Energy, Inc.*, No. 6:20-cv-1845-Orl-WWB-DCI, 2020

U.S. Dist. LEXIS 240294, at *5 (M.D. Fla. Nov. 6, 2020) (citations and quotation marks omitted). "A court may allow discovery before the Rule 26(f) conference upon a showing of 'good cause.'" *Id.* (citations omitted). "In order to obtain expedited discovery, the burden is on the moving party to show good cause for departing from the usual discovery procedures." *Id.* (citations and quotation marks omitted). Courts evaluate the following factors when determining good cause: "(1) whether a motion for preliminary injunction is pending; (2) the breadth of the requested discovery; (3) the reasons for requesting expedited discovery; (4) the burden on the opponent to comply with the request for discovery; and (5) how far in advance of the typical discovery process the request is made." *Id.*

Courts routinely deny requests for expedited discovery, like Pratt's, that fail to articulate reasons that justify disruption of the normal discovery process. *See, e.g., Centennial Bank v. Servisfirst Bank Inc.*, No. 8:16-cv-88-T-36JSS, 2016 U.S. Dist. LEXIS 203675, at *11 (M.D. Fla. Jan 29, 2016) ("At bottom, it appears that the expedited discovery sought by Centennial is broad-based and largely irrelevant to its request for a preliminary injunction. Accordingly, the Court finds that Centennial has not shown good cause for the requested expedited discovery"). Moreover, the Middle District has acknowledged that it is appropriate to deny a request for expedited discovery when, like here, the plaintiff's concerns were purely speculative. *See Mineola Holdings v. Stoney brook Fin. P.'ship*, Case No. 6:20-cv-2081-Orl-78LRH, 2020 U.S. Dist. LEXIS 257482, at *5, (Dec. 8 2020) (citing *Xfinity Mobile v. Devin Tech Inc.*, No. 1:19-

CV-03294-JPB, 2019 U.S. Dist. LEXIS 232951, at *1 (N.D. Ga. Aug. 20, 2019) in support of denial of request for expedited discovery).

## PRATT'S MOTION FOR EXPEDITED DISCOVERY SHOULD BE DENIED

Pratt argues that it will be irreparably harmed because the statute of limitations might run on "unknown Defendants who received the WestRock Sale Proceeds" if Pratt is forced to wait for the normal course of discovery to commence. (ECF 21 p. 8). Pratt suggests that there are "unusual circumstances or conditions" that exist to prejudice Pratt if it "were required to wait the normal time." (*Id.*). Yet Pratt fails to identify any unusual circumstance or condition because they do not exist. Pratt has cited no facts alleging that assets have been moved around by the Porter family or that there is reason to believe that such transfers have occurred.

The assertion that Pratt needs to identify "John Does" is specious, because Pratt knows that all Defendants were parties to the WestRock Asset Purchase Agreement. Pratt knew about WestRock's interest in buying Porter Pizza throughout 2016. Pratt knew of the March 13, 2017 sale of Porter Pizza to WestRock when it occurred. (May 8, 2017 internal Pratt email attached as Exhibit 69) (stating Pratt employees "heard about [the sale] on the same day, Monday March 13"). Pratt believed that Mr. Porter did nothing wrong and that the Supply Agreement was merely void after the WestRock sale. Pratt even continued to sell boxes to WestRock after the sale and told Porter Pizza that "We've got your back for as long as you need us." (Exhibit 39).

In addition, *Pratt has known since at least June 2019 that Porter Pizza had no assets*. (Hal Porter Deposition Transcript from the Georgia Litigation, June 5, 2019, p.10:7-12:23. A copy of the cited excerpts are attached as Exhibit B). A copy of the WestRock APA was produced to Pratt in the first half of 2019 in the Georgia Litigation and WestRock used it as an exhibit to Mr. Porter's deposition. Pratt has known about these transfers and the parties involved for many years.

Moreover, in its motion, Pratt states that it was a creditor of Porter. However, Pratt did not notify Defendants of any potential claim at that time and opted to "keep stonewalling" Mr. Porter when he tried to discuss any open issues under the Supply Agreement. Pratt first asserted its "claim" in the Georgia Litigation in 2018. Despite the years of ongoing litigation, Pratt waited until the eleventh hour to raise the issues now before the Court. Their lack of diligence does not create "good cause" for expedited discovery.

Pratt's assertion that it was a creditor is also false for the reasons that Porter Pizza will address more thoroughly in its Motion to Dismiss, to be filed on or before Monday, February 27, 2023. Pratt is trying to force this invasive discovery before having any judgment, before proving that it is in fact a "creditor" under Florida's Uniform Fraudulent Transfer Act, and based upon a spurious claim for damages. Pratt is not entitled to seek the Porter family's personal financial information.[2]

---

[2] Porter Pizza is contemplating filing its own motion to stay discovery pending the resolution of its motion to dismiss, as Pratt should not be entitled to utilize this litigation merely (or primarily) as a means to seek financial documents for the Georgia ligation.

Finally, although Pratt insists that the discovery sought is narrow, the proposed discovery requests seek pure financial information that would include extensive details and documents regarding where the entities have invested or placed their money six years after a purchase. Pratt does not actually want identities; it seeks bank account and investment information. This is inappropriate and is nothing more than a thinly-veiled attempt to pressure the Porter family. "[C]ourts have recognized that financial worth discovery can be an invasion of privacy that unduly pressures or coerces a defendant into settling unwarranted claims[.]" *Meininger v. Fla. Pediatric Assocs., LLC*, 453 B.R. 433, 438 (M.D. Fla. Bkr. 2011) (referencing *Tennant v. Charlton*, 377 So.2d 1169, 1170 (Fla. 1979) in denying a request for invasive financial discovery where the seeking party failed to establish the underlying basis for the request).

Pratt's proposed discovery requests involve three separate discovery vehicles, including a multi-hour deposition, which suggests that Pratt intends on seeking information other than identities. Pratt's discovery requests are tantamount to a deposition in aid of execution prior to judgment. Pratt has not alleged good cause for the overbroad, unnecessary, and premature discovery it seeks.

## CONCLUSION

Pratt has failed to demonstrate why it is entitled to ***expedited*** discovery at this late stage when it 1) has no judgment, 2) knows there is no factual basis to support its asserted claims for damages, and 3) has waited until now to pursue a fraudulent transfer claim despite having all facts necessary to pursue it since 2019. Pratt has not shown good cause to engage in expedited discovery and should not be entitled to the

overly broad discovery it now seeks. Porter Pizza respectfully request that the Court deny Pratt's motion.

Respectfully submitted on February 23, 2023.

By   Campbell Trohn Tamayo & Aranda

/s/: John Marc Tamayo
John Marc Tamayo
Florida Bar No. 030910
j.tamayo@cttalaw.com
Jennifer M. Vasquez
Florida Bar No. 71942
j.vasquez@cttalaw.com
1701 South Florida Avenue
Lakeland, Florida 33803
P.O. Box 2369
Lakeland, FL 33806-2369
(863) 686-0043 (phone)
(863) 616-1445 (facsimile)



David J. Hungeling (application for admission *pro hac vice* pending)
Georgia State Bar No. 378417
Adam S. Rubenfield
Florida Bar No.: 0865931
Georgia State Bar No.: 419033
Peachtree 25th, Suite 599
1718 Peachtree Street
Atlanta, Georgia 30309
TEL (404) 574-2466
FAX (404) 574-2467
david@hungelinglaw.com
adam@hungelinglaw.com

***Attorneys for Defendants***