## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PRATT CORRUGATED HOLDINGS, INC.,

     Plaintiff,

v.                                     Case No. 8:23-cv-200-WFJ-CPT

PORTER PIZZA BOX OF FLORIDA, INC.,
PORTER PIZZA BOX OF ARIZONA, LLC,
PORTER PIZZA BOX OF TEXAS, LLC,
PORTER LOGISTICS, LLC, HALDEN L. PORTER,
HALDEN L. PORTER REVOCABLE TRUST,
LYNDA GAY PORTER, LYNDA GAY PORTER
REVOCABLE TRUST, J. CHASE PORTER,
J. CHASE PORTER REVOCABLE TRUST,
GRANT T. PORTER, GRANT T. PORTER
REVOCABLE TRUST, JOHN DOES 1–25, and
PORTER INVESTMENT HOLDINGS, LLC,

     Defendants.

_____/

## ORDER

Upon due and careful consideration of Defendants' Motion to Dismiss

Plaintiff's First Amended Complaint (Dkt. 51) and Plaintiff's Response in

Opposition (Dkt. 59), the Court concludes that the First Amended Complaint

("Amended Complaint") is sufficient to withstand dismissal.

### I.    BACKGROUND

Plaintiff Pratt Corrugated Holdings, Inc. ("Pratt") brings this action seeking

to avoid alleged fraudulent transfers made by the Defendants in violation of

Florida's Uniform Fraudulent Transfer Act ("FUFTA"), Chapter 726, Florida

Statutes.  Dkt. 1.  The Amended Complaint sets forth the following factual

allegations, which the Court accepts as true and draws all reasonable inferences

from those facts in favor of the non-movant, Plaintiff.[1]

### A.    Allegations

Pratt and the "Porter Affiliates"[2] began a business relationship in July 2012.

Dkt. 47 ¶ 28.  Pratt sold corrugated paper pizza boxes to Star Pizza Box (the Porter

Affiliates).  Star Pizza Box (later known as Porter Pizza) printed logos onto the

pizza boxes.  In mid-2016, Pratt and Defendant Halden ("Hal") Porter began

discussions about Pratt purchasing certain assets from the Porter Affiliates.  *Id*. ¶¶

29–31.  Although an agreement for the acquisition was never reached, in October

2016, the parties settled on a Master Supply and Purchase Agreement ("Supply

Agreement").  *Id*. ¶ 35, Dkt. 47-1.[3]

Pratt alleges that it agreed under the Supply Agreement 1) to provide the

Porter Affiliates with discounted prices for the first six months, 2) to pay rebates,

and 3) to make a one-time payment of $160,000 to be paid over the first nine

---

[1] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  The Court need not accept as true any legal conclusions "couched" as facts.  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1185 (11th Cir. 2003) (same).

[2] The Porter Affiliates include Defendants Porter Pizza Box of Florida, Inc., Porter Pizza Box of Arizona, LLC, Porter Pizza Box of Texas, LLC, and Porter Logistics, Inc.  Dkt. 47 at 3 n.1.

[3] The agreement was signed by Defendant Hal Porter as President of "Starr Pizza Box, a Florida corporation."  Dkt. 47-1 at 6.

months.  *Id.* ¶ 36.  In exchange, the Porter Affiliates would 1) purchase "at least

$17 million in products annually for three years[,]" 2) grow the business "to $20

million annually over the three-year term" to be accomplished by transferring

orders from other suppliers to Pratt, and 3) allow Pratt "to participate as a joint

exhibitor under the 'Star Pizza Box' brand at the International Pizza Expo in Las

Vegas on March 28–30, 2017."  *Id.* ¶ 37.  Pratt characterizes these as inducements

and representations from the Porter Affiliates for the sale of boxes and other

products at a discounted price.  *Id.* ¶¶ 37–38.

Several events occurred during the next five or so months, which caused the

parties' relationship to decline.  Pratt alleges that the Porter Affiliates breached the

Supply Agreement 20 days after its effective date by signing a letter of intent to

sell substantially all of the Porter Affiliate's assets to WestRock Company, a

competitor of Pratt.  *Id.* ¶ 40.  Asserting it was unaware of the letter of intent, Pratt

alleges it continued to perform under the Supply Agreement by providing

$624,901 in discounts on pizza box purchases, paying $53,607 toward the

$160,000 contractual payment (while being prevented from participating in the

International Pizza Expo), and spending money to rebuild certain machinery to

meet its obligations under the Supply Agreement.  *Id.* ¶ 41.

Pratt next cites examples of the "fraud" that continued for the remainder of

their relationship.  In January 2017, "Hal Porter told Pratt that he was still in

negotiations to sell to a private equity group," which Pratt claims was false.  *Id.* ¶

42.  Not only was Hal Porter "moving forward with his plan to sell all of the Porter

Affiliates' assets to WestRock," but the day before Hal Porter allegedly made this

statement, he had "just received WestRock's draft Asset Purchase Agreement,

along with an extension of the exclusivity provision in the WestRock Letter of

Intent prohibiting negotiations with anyone other than WestRock."  *Id.*  Pratt

alleges that these misrepresentations and omissions constitute breaches of the

Supply Agreement and caused Pratt "to continue providing economic incentives to

its own detriment."  *Id.* ¶ 43.

On March 13, 2017, the asset sale to WestRock closed pursuant to the Asset

Purchase Agreement ("WestRock APA") between WestRock as purchaser and the

Porter Affiliates as "Sellers" and the "Shareholders" named as Defendants Hal

Porter, Lynda Porter, Chase Porter, Grant Porter, and each of the individuals as

trustee for each one's respective trust.  *Id.* ¶ 44.  The assets sold (the "WestRock

sale proceeds"), with certain portions to be paid out over time.  Dkt. 47 ¶¶ 3, 48.

Pratt alleges the WestRock sale proceeds were thereafter transferred by some or all

of the Porter Affiliates and Hal Porter to some of the other Defendants and perhaps

unknown parties (the "transfers").  *Id.* ¶ 4.

Pratt alleges that although the Supply Agreement was "specifically

excluded" from the asset sale, "the purported right to receive certain rebate

payments from Pratt" was assigned to WestRock. *Id.* ¶ 45. At the same time, according to Pratt, the obligations were not assigned to WestRock, and the Porter Affiliates ceased pizza box operations, and consequently stopped ordering pizza boxes and products from Pratt. *Id.* ¶¶ 46, 52. Pratt also alleges that it never received advance notice of the asset sale, which was contrary to the terms of the Supply Agreement. *Id.* ¶ 47.

Pratt alleges that it was a FUFTA creditor of Hal Porter and the Porter Affiliates on (or prior to) March 13, 2017, the date the asset sale closed. *Id.* ¶¶ 48, 50, 58, 61, 69, 77, 87, 95, 103. Pratt alleges that the transfers of the WestRock sale proceeds were "made in exchange for nothing" or "no value" and rendered the Porter Affiliates unable to fulfill their obligations under the Supply Agreement because they were "dramatically" or "unreasonably undercapitalized" and insolvent. *Id.* ¶¶ 50, 64, 72, 80, 90, 98, 106. Pratt contends these transfers were either actually or constructively fraudulent as to Pratt because they were made when the Porter Affiliates were insolvent and when the Porter Affiliates and Hal Porter owed significant debts to Pratt. *Id.* ¶ 5. Pratt alleges the transfers were made with actual intent to hinder, delay, and defraud Pratt and their other creditors. *Id.* ¶¶ 5, 51, 65, 73, 81.

**B.   Litigation Timeline**

On January 4, 2018, Porter Pizza Box of Florida, Inc. filed a lawsuit against Pratt in the Northern District of Georgia: *Porter Pizza Box of Florida, Inc. v. Pratt Corrugated Holdings, Inc.*, No. 1:18-cv-63-AT (N.D. Ga.) ("the Georgia action"), filed January 4, 2018. *Id.* ¶ 53. In the Georgia action, Porter Pizza Box sued Pratt for breach of the Supply Agreement by failing to pay rebates and to timely meet Porter Pizza's purchase orders. *Id.* ¶ 54; *see also* Georgia action at docket 185. Pratt countersued Porter Pizza and added Hal Porter as a defendant. *Id.* ¶ 55; *see also* Georgia action at docket 185. Pratt alleged Porter Pizza breached the Supply Agreement when it stopped ordering products from Pratt and failed to pay invoices that came due before Porter Pizza sold the company to WestRock. *See* Georgia action at docket 4. Whether the Supply Agreement is a binding contract was decided by the Georgia district judge on January 6 this year and reiterated in a recent order. *Id.* at dockets 182, 191. The Georgia action is set for trial next month.

Five years after the Georgia action was filed, on January 27, 2023, Pratt filed both this instant action alleging fraudulent transfers and a similar action in the Southern District of Ohio—*Pratt Corrugated Holdings, Inc. v. Porter Pizza Box of Ohio, LLC*, No. 2:23-cv-448-ALM-KAJ (S.D. Ohio) ("Ohio action"). Both the Ohio action and the case at bar have pending, almost identical, motions to dismiss

the respective amended complaints.  This Court stayed discovery in the instant

action, noting the upcoming trial of the Georgia action.  Dkt. 66.

## II.    DISCUSSION

The Court will now consider the pending motion to dismiss.  Defendants

raise four grounds for dismissal: 1) Plaintiff is not a "creditor" under FUFTA as to

the WestRock APA; 2) no facts are alleged that show Defendants acted with

fraudulent intent to avoid a debt; 3) Plaintiff's claims are barred by the four-year

statute of limitations; and 4) Porter Investment Holdings, LLC ("Porter

Investment") is not a proper party defendant absent factual allegations directed

against it.  Each ground will be addressed in turn.

The allegations of a complaint must contain sufficient facts, which are

accepted as true and construed in the light most favorable to the plaintiff, to state a

claim for relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Pielage v.*

*McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  Consideration should be

limited "to the well-pleaded factual allegations, documents central to or referenced

in the complaint, and matters judicially noticed."  *La Grasta v. First Union Sec.,*

*Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

The Court may take judicial notice of public records such as other lawsuits

and the papers filed therein in other district courts, particularly when the actions

involve the same parties and concern related issues central to the plaintiff's claims

and their authenticity is not challenged.  *See Beepot v. J.P. Morgan Chase Nat'l*

*Corp. Servs., Inc.*, 57 F. Supp. 3d 1358, 1366 (M.D. Fla. 2014).  This type of

judicial notice may be taken without converting the motion to dismiss to a motion

for summary judgment.  *See Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x

52, 53 (11th Cir. 2006) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278

(11th Cir. 1999)).  The Court, however, considers these documents not for the truth

of the matters alleged but only to the extent they speak for themselves.  *France v.*

*Ditech Fin., LLC*, No. 8:17-cv-3038-SCB-MAP, 2018 WL 1695405, at *3 (M.D.

Fla. Apr. 6, 2018) (citing *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir.

1994)).[4]  The Court takes judicial notice of the docket entries in the Ohio and

Georgia actions.

### A.   Creditor under FUFTA

Defendants assert that Pratt was not, and is not, a FUFTA creditor with a

claim against Porter Pizza under the facts alleged.  A creditor is "a person who has

a claim."  Fla. Stat. § 726.102(5).  A claim is "a right to payment, whether or not

the right is reduced to judgment, liquidated, unliquidated, fixed, contingent,

---

[4] *See also Ates v. Florida*, 794 F. App'x 929, 930 (11th Cir. 2020) (*per curiam*); *Mathieson v. Wells Fargo Bank, N.A.*, 524 F. Supp.3d 1246, 1256 n.10 (M.D. Fla. 2021) (citing *Ates* and *Jones*).

matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."
Fla. Stat. § 726.102(4).

Both parties' positions rely on differing interpretations of the terms of the Supply Agreement, which is at issue in the Georgia action for breach of contract and fraud. Defendants argue here that Pratt's asserted "claim" for "discounts it provided under the Supply Agreement, monies it spent to rebuild machinery, 'catch-up' payments it made to Porter Pizza, and lost profits" does not constitute debts "that Defendants would have owed or known about at the time of the WestRock sale [in 2017] or thereafter." Dkt. 51 at 11. On the other hand, Plaintiff Pratt argues and alleges that it began performing the Supply Agreement in October 2016 and the Porter Affiliates received benefits before the asset sale in March 2017. Dkt. 59 at 10; Dkt. 47 ¶¶ 2, 7, 38, 40, 41, 43. Pratt therefore concludes that it was a creditor as early as October 2016.

At this juncture, the Georgia federal district court has ruled against the Porter Affiliates and other Defendants with respect to the Supply Agreement's binding and enforceable nature. If Pratt were a creditor as early as October 2016, it was a creditor both at the time of the asset sale and in advance of the transfers (which were made subsequent to the asset sale closing). Dkt. 59 at 2; Dkt. 47 ¶¶ 4, 50, 58. Assuming the factual allegations as true, the Court finds Plaintiff has sufficiently alleged that Pratt is a creditor with a claim under FUFTA.

## B.   Facts Showing Fraudulent Intent

Defendants argue that the Amended Complaint fails to allege facts, as opposed to legal conclusions, showing Defendants had fraudulent intent in transferring the WestRock sale proceeds.  Specifically, Pratt did not "explain how or why the Shareholder Defendants' sale of their family business in an arms-length transaction was intended to defraud a company supplier."  Dkt. 51 at 13.

Pleading a FUFTA claim does not require the plaintiff to comply with Rule 9(b) in pleading fraud with particularity.  *Citgo Petroleum Corp. v. Mid-State Energy, Inc.*, No. 8:19-cv-245-VMC-JSS, 2019 WL 1330733, at *3 (M.D. Fla. Mar. 25, 2019).  Yet, the claim must satisfy the lower Rule 8(a) standard as espoused in *Twombly* and *Iqbal*, and the plaintiff must plead facts moving the claims "across the line from conceivable to plausible."  *Columbia Cas. Co. v. W. Jacksonville Care & Rehab. Ctr., LLC*, No. 3:18-cv-1384-J-39JBT, 2019 WL 5103336, at *2 (M.D. Fla. June 17, 2019) (dismissing FUFTA claims and quoting *Twombly*), *approved by*, 2019 WL 5103337 (M.D. July 24, 2019).  Pratt alleges both actual fraud under section 726.105(1)(a), which may be proven based on the statutory "badges of fraud," and constructive fraud under section 726.105(1)(b).

Given Plaintiff's allegations concerning the "badges of fraud" for the actual fraud claims and concerning the transfers being made by the Defendants for less

than reasonably equivalent value, the Court finds the Amended Complaint passes the low bar of Rule 8(a).

### C.   Statute of Limitations

The applicable statute of limitation under FUFTA is four years after the transfer was made "or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant."  Fla. Stat. § 726.110; *United States v. Mendez*, No. 8:21-cv-2218-VMC-SPF, 2022 WL 1238655, at *3 (M.D. Fla. Feb. 7, 2022).  The parties take differing positions on the timing of the transfers at issue.

It is undisputed that the closing on the asset sale occurred on March 13, 2017, well over four years before Pratt filed this lawsuit in January 2023. According to Defendants, the shareholders under the WestRock APA designated Hal Porter as the seller representative to represent them and direct the money from the sale as of the date of the WestRock APA.  Dkt. 51 at 14.  The WestRock sale proceeds were held in escrow accounts per the WestRock APA and had already been transferred to Hal Porter as the seller representative as of the closing.  *Id*. Defendants assert that the fact that some of the funds would be distributed at a future date is irrelevant because the original transferee was the seller representative Hal Porter, not the escrow agent referenced in the WestRock APA.  *See*, *e.g.*, *Andreini & Co. v. Pony Express Delivery Servs.*, 440 F.3d 1296 (11th Cir. 2006)

(holding that broker was not "initial transferee" but mere conduit when broker received funds from bankruptcy debtor and paid them according to the debtor's request).  Additionally, Defendants argue that one of the escrow accounts was to be released within four months of closing.  Dkt. 51 at 14 n.9.

Pratt counters that the transfers by Hal Porter and the Porter Affiliates occurred after the closing on the asset sale to WestRock.  Dkt. 59 at 16.  Pratt contends that the resolution of the statute of limitations defense is not apparent on the face of the Amended Complaint and therefore must not be decided on a motion to dismiss.  *See Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003).

Considering both sides, the Court finds that factual disputes exist concerning the statute of limitations defense.  Pratt claims to seek relief for the transfers made "when litigation [the Georgia action filed in January 2018] was pending,"[5]  Given the Georgia action was filed five years before this action, a factual development is necessary before making any findings regarding FUFTA's statute of limitations.

### D.   Porter Investment Holdings, LLC

---

[5] *See* Dkt. 59 at 14 ("Plaintiff alleges, among other things, that the transfers were made: to insiders of the Porter Affiliates; when the Porter Affiliates knew of the obligations to Plaintiff; when litigation was pending; and that the Porter Affiliates were ultimately insolvent as a result of the transfers.  [See Dkt. 47] ¶¶ 65, 73, 81.").

Defendants contend that Porter Investment should be dismissed with prejudice because 1) the Amended Complaint fails to allege any wrongdoing on the part of Porter Investment and 2) each count "identifies the entities against which it is pled, but no count references Porter Investments." Dkt. 51 at 15. Defendants claim the Amended Complaint is devoid of any material facts as to Porter Investment. *Id*. Defendants provide no cases or authority for this Court to consider.

Reviewing the factual allegations of the Amended Complaint, Porter Investment is a Florida limited liability company with Hal Porter as its "manager" and "sole member" and the one individual who "controls" it. Dkt. 47 ¶¶ 11, 13. Pratt further alleges that "[u]pon information and belief, Porter Investment is a *subsequent transferee* of the transfers, which were utilized, among other things, to acquire real estate in Polk County and Manatee County, Florida." *Id*. ¶ 21 (emphasis added). These paragraphs are incorporated by reference into each of the six counts. *Id*. ¶¶ 60, 68, 76, 84, 92, 100.

As alleged, "Pratt was a creditor of Hal Porter and Porter Affiliates"—not Porter Investment. *Id*. ¶¶ 58 (Factual Background) & 60, 68, 76, 84, 92, 100 (Counts I–VI).[6] Porter Investment is not described as a debtor but rather a

---

[6] Porter Investment is not identified as one of the Porter Affiliates. Dkt. 47 at 3 n.1 (naming Porter Affiliates).

"subsequent transferee." *Id*. ¶ 21.  Under FUFTA, a creditor must allege

wrongdoing on the part of the debtor as the transferor.  *See* Fla. Stat. § 726.105(1)

("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . .

. *if the debtor made the transfer or incurred the obligation . . . with actual intent to*

*defraud* or without receiving reasonably equivalent value.") (emphasis added).

Here, there are no allegations concerning the intent, fraudulent or otherwise,

on the part of Porter Investment as a transferee.  Pratt admits this, citing FUFTA's

focus that the intent be linked to the debtor.  Dkt. 59 at 17.  As Pratt points out,

however, Porter Investment is an entity to whom the debtor's property was

transferred and that entity may raise the affirmative defense of good faith.  *In re*

*Lydia Cladek, Inc.*, 494 B.R. 555, 561 (Bankr. M.D. Fla. 2013) (referencing §

726.109(1), Florida Statutes).  The good faith defense involves questions of fact

which are not properly resolved on a motion to dismiss.  *Kapila v. Integra Bank,*

*N.A. (In re Pearlman)*, 440 B.R. 569, 577 & n.32 (Bankr. M.D. Fla. 2010).

The Court finds that the Amended Complaint is sufficient to proceed against

Porter Investment.  Pratt has alleged constructive and actual fraud against the

debtor Hal Porter, and Hal Porter allegedly manages and controls Porter

Investment as its sole member.

Accordingly, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 51 and S-56)[7] is denied.  For the same reasons set forth in its Order of June 7, 2023, at docket 66, the Court extends and continues the stay of discovery in this case until further order.  The parties shall notify this Court upon the conclusion of the Georgia action and what, if any, judicial action is needed by this Court.

      **DONE AND ORDERED** at Tampa, Florida, on July 11, 2023.

_____
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of record

---

[7] The sealed docket entry at S-54 is the same motion without redactions.